**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 1, 2018**

# In the Court of Appeals of Georgia

A17A2037. KELLY v. THE STATE.

REESE, Judge.

A Clayton County jury found Timothy Kelly guilty beyond a reasonable doubt of one count each of rape, kidnapping, kidnapping with bodily injury, and battery, and two counts of aggravated assault.[1] He appeals from the denial of his amended motion for new trial, arguing that the trial court erred in accepting his waiver of counsel. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record reveals the following pertinent facts. On October 14, 2004, at around 3:00 a. m., N. G., a 19-year

---

[1] See former OCGA §§ 16-6-1 (a) (1) (2004); 16-5-40 (a) (2004); 16-5-40 (b) (1) (2004); 16-5-23.1 (a) (2004); 16-5-21 (a) (1) (2004); 16-5-21 (a) (2) (2004).

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

old woman, was punched in the face and raped at knife point next to a vacant building near her apartment. After the assault and rape, the assailant fled, and N. G. ran home. Someone at N. G.'s home contacted the police, and an officer with the Clayton County Police Department responded. N. G. was transported to a hospital. At the hospital, a registered nurse used a rape kit to perform a sexual assault examination on N. G. The examination results were entered into the Combined DNA Indexing System (CODIS) database in 2006. In 2013, the Clayton County Police Department received notice that a CODIS match had been made indicating that the DNA evidence matched a known sample from the Appellant.

In 2015, a jury found the Appellant guilty on all charges, and the trial court initially sentenced him to life with a possibility of parole, plus 20 years to be served concurrently. The Appellant filed an amended motion for new trial. After a hearing, the trial court vacated the Appellant's convictions on the kidnapping, kidnapping with bodily injury, battery and aggravated assault charges and re-sentenced him on the rape conviction to serve life with the possibility of parole.[3] This appeal followed.

_____

[3] The Appellant, acting pro se, subsequently filed a motion for a sentence modification, which was dismissed without prejudice by the trial court for failure to comply with OCGA § 17-1-1 (a). The Appellant does not challenge this dismissal on appeal.

Generally, on appeal from a criminal conviction, the appellate court

> view[s] the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. [The] Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[4] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the Court] must uphold the jury's verdict.[5]

The standard of *Jackson v. Virginia*, supra, is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes charged.[6] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

The Appellant argues that, the after he waived his right to counsel, the trial court erred by informing him that he could not make a post-waiver request for counsel. Specifically, he argues that the trial court's misstatement created harmful error and, thus, warrants a new trial. We disagree.

---

[4] 443 U. S. at 319 (III) (B).

[5] *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004) (citations omitted).

[6] See *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

A person criminally accused has the guaranteed right to self-representation under the Sixth Amendment to the United States Constitution[7] and the Georgia Constitution,[8] but the right cannot be exercised "unless it is shown that he has adequately waived his right to counsel."[9] "Under *Faretta*[,] the trial court must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will establish that he knows what he is doing and his choice is made with eyes open."[10]

"After a defendant properly waives his Sixth Amendment right to counsel, that right is no longer absolute."[11] However, the right to counsel does not evaporate entirely after a valid waiver, and a defendant may make a "post-waiver request for

---

[7] See *Faretta v. California*, 422 U. S. 806, 833 (III) (C), 836 (V) (95 SCt 2525, 45 LE2d 562) (1975)

[8] Ga. Const. of 1983, Art. I, Sec. I, Par. XI; see also *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009).

[9] *Wayne v. State*, 269 Ga. 36, 37-38 (2) (495 SE2d 34) (1998) (citations and punctuation omitted).

[10] *Evans*, 285 Ga. at 68 (citation and punctuation omitted).

[11] *Wilkerson v. State*, 286 Ga. 201, 204 (2) (b) (686 SE2d 648) (2009) (citations omitted).

counsel.”[12] It is within the trial court's discretion to decide whether to grant a post-waiver request for counsel.[13]

The record reflects that the trial court conducted a detailed colloquy with the Appellant, to ensure that the Appellant knowingly and voluntarily waived his right to counsel.[14] At the beginning of his trial, the Appellant notified the trial court of his desire to represent himself. After the trial court established that the then 30-year old defendant had three years of college and no history of mental illness, the court cautioned him about the risks of self-representation, as well as the advantages of having an attorney represent him, as follows:

> COURT: Okay. Have you previously represented yourself in any civil or criminal case?
> THE APPELLANT: No, ma'am.
> COURT: Do you think you could do a better job than a lawyer representing you in this case?
> THE APPELLANT: Yes, ma'am.
> COURT: And that's any lawyer, not just Mr. Davis. Is that right?
> THE APPELLANT: Um, um, yes, ma'am.

---

[12] Id. (citations omitted).

[13] See id.

[14] See *Evans*, 285 Ga. at 68 (“[A] defendant's waiver of his right to counsel is valid if the record reflects that the defendant was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver.”) (citation and punctuation omitted).

. . .

COURT: Mr. Kelly, have you considered the disadvantages of not being represented by a lawyer?

THE APPELLANT: Yes, ma'am.

COURT: All right. Have you considered that most often it's unwise to represent yourself, even a lawyer?

THE APPELLANT: Yes, ma'am.

COURT: Even if you were a lawyer? Have you considered that?

THE APPELLANT: Yes, ma'am. I have.

COURT: Okay. Do you understand that you may ultimately defen[d] yourself to your detriment?

THE APPELLANT: Yes, ma'am.

COURT: Do you understand that you're entitled to no special treatment by the Court if you represent yourself?

THE APPELLANT: Yes, ma'am.

COURT: Do you understand that you must follow all of the technical rules of substantive law, procedural law, and evidence for making motions, objections, the presentation of evidence, jury selection, and argument even if you do not know those rules?

THE APPELLANT: Yes, ma'am.

COURT: Do you understand that you will have to abide by the same rules that it took lawyers years to learn?

THE APPELLANT: Yes, ma'am.

COURT: Do you understand that if you represent yourself, then you're assuming the full responsibility of your defense?

THE APPELLANT: Yes, ma'am.

COURT: Do you understand that you may miss important defenses to your case because of your lack of knowledge of the law?

THE APPELLANT: Yes, ma'am.

COURT: Do you understand that even if you have some knowledge of the law, you will lose the benefit of an independent perspective upon [sic] an attorney in analyzing, reviewing, and presenting your case in its most effective way?

THE APPELLANT: Yes, ma'am.

6

COURT: And do you understand that if you're found guilty, you may not be able to present the case in a manner best to obtain the most favorable sentence?

THE APPELLANT: Yes, ma'am.

COURT: Do you understand that your access to the District Attorney will be reduced making it more difficult to defend yourself because you will have a [sic] less of a chance to work out a favorable resolution from this point, from the point you represent yourself? Do you understand that?

THE APPELLANT: Yes, ma'am.

. . .

COURT: Do you understand that if you get convicted, you cannot claim your own incompetency as a basis for appeal?

THE APPELLANT: Yes, ma'am.

COURT: Do you understand that . . . you could be able to do that if you were represented by a lawyer?

THE APPELLANT: Yes, ma'am.

COURT: Because you understand . . . that's going to be a right that you give up?

THE APPELLANT: Yes, ma'am.

After the extended colloquy, the trial court found that the Appellant knowingly, voluntarily, and intelligently waived his right to counsel and that he understood the dangers of proceeding to trial without counsel. Further, at the Appellant's request, the trial court instructed defense counsel to act as "second chair" during the trial to assist the Appellant upon request. Based on the foregoing, as a threshold matter, we find that the trial court properly questioned the Appellant and that the Appellant

knowingly and voluntarily waived his right to counsel after being apprised of the dangers of self-representation.[15]

Toward the end of the *Faretta* hearing, the trial court asked the Appellant, "[d]o you understand that once the trial begins, you cannot change your mind and decide that you want to be represented by a lawyer?" The Appellant responded affirmatively "[y]es, ma'am." The Appellant argues that the trial court's statement violated his right to counsel.

Pretermitting whether the trial court's statement in this case was erroneous or misleading, the Appellant failed to object to the statement and, thus, waived appellate review of the issue. It is well settled in Georgia that

> a party may not fail to object to an erroneous ruling or statement of a trial court and then attack that ruling on appeal. A party's duty to object in these circumstances gives the trial court the opportunity to correct the alleged error, and avoids the possibility that a party may intentionally fail to object to a ruling and take a chance of a favorable outcome at trial based on the knowledge he or she stands a chance of obtaining a reversal on appeal.[16]

---

[15] See *Faretta*, 422 U. S. at 835-836 (V); see also *Evans*, 285 Ga. at 68-69.

[16] *Wilkerson*, 286 Ga. at 205-206 (2) (b) (citations and punctuation omitted).

8

We find the *Wilkerson* case, cited by both parties, dispositive of the issue presented. Here, as in *Wilkerson*, the Appellant was represented by counsel during the *Faretta* hearing and neither he nor his defense counsel objected to the trial court's statement.[17] Also, as stated in *Wilkerson*, the trial court's statement as to whether the Appellant could later decide to represent himself is not part of the *Faretta* colloquy.[18]

Further, the record shows that the Appellant never asked to be represented by counsel during the course of the trial or re-visited the issue with the trial court in order to give the court an opportunity to correct its statement.[19] Finally, at the motion for new trial hearing, both the Appellant and defense counsel testified. Defense counsel testified that "[a]t no time during the trial . . . did [the Appellant] ever ask me any question relating to a witness or anything else."

Based on the foregoing, we find that the Appellant knowingly, voluntarily, and intelligently waived his right to counsel; that he waived any error in the trial court's

[17] See *Wilkerson*, 286 Ga. at 206 (2) (b).

[18] *Wilkerson*, 286 Ga. at 205 (2) (b) ("[T]he subject of the trial court's erroneous statement -- whether or not a defendant can later reverse his decision to represent himself -- is not part of the required Faretta colloquy, which simply requires the court to warn a defendant of the dangers that can arise from self-representation.") (citations, punctuation and footnote omitted).

[19] See *Wilkerson*, 286 Ga. at 205 (2) (b).

9

statement; and that he never made a post-waiver request for counsel during trial. Thus, because he has failed to show that the trial court erred in accepting his waiver of counsel, we find that the trial court did not err in denying his motion for new trial.

*Judgment affirmed. Ellington, P. J., and Andrews, J., concur.*